IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| COURTNEY FRAZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHNSON CONTROLS, INC.; | )   CV-11-RRA-3956-W |
| ANM SERVICES, LLC; | ) |
| EDIASA; and | ) |
| GENOT'S AZ QUALITY SERVICES, | ) |
| INC., d/b/a AZ QUALITY, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**
(Re Defendant Johnson Controls' Motion to Dismiss Plaintiff's Complaint (doc. 8), and
Plaintiff's Motion for Leave to File First Amended Complaint (doc. 20)[1]

The original complaint sets out counts for sexual harassment (Count I), pregnancy discrimination (Count II), and retaliation (Count III), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 and as amended in 1978 by the Pregnancy Discrimination Act, Section 701(k). The complaint also seeks damages pursuant to 42 U.S.C. § 1981a.[2] In addition to the federal claims, the plaintiff

---

[1]The motion to amend is a non-dispositive motion. However, since these two motions implicate each other, both will be addressed in the form of a report and recommendation.

[2]"Section 1981A(a)(1) provides that a complaining party may recover compensatory and punitive damages against a respondent who has engaged in unlawful intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., unless that complaining party can recover under 42 U.S.C. §1981. Only race discrimination claims can be brought under §1981." *Enforcement Guidance: Compensatory & Punitive Damages Available Under 102 of the Civil Rights Act of 1991*, 1992 WL 1364354 (E.E.O.C. Guidance July 14, 1992) (internal footnotes omitted).

asserts the following state law counts: invasion of privacy (Count III);[3] negligent and/or wanton supervision, training, and or retention (Count IV): and assault and battery (Count V).

This case is before the court on the plaintiff's "Motion for Leave to File First Amended Complaint" (doc. 20), which the plaintiff has proferred to the court, and on Johnson Control Inc.'s Rule 12(b)(6) motion to dismiss (doc. 8) and its assertion that the amended complaint should be denied, on the ground of futility, as the complaint does not sufficiently allege that JCI is the plaintiff's employer. As the same standards and reasoning apply, JCI's motion to dismiss, which refers to the original complaint, will be applied to the amended complaint. The grounds that JCI has argued in support of its assertion of insufficiency are the only grounds that will be considered by this court. When allegations are discussed, they are the allegations in the amended complaint.

## AMENDMENT RULE

Rule 15 of the Federal Rules of Civil Procedure states:

> A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).

The plaintiff seeks to amend the original complaint, a pleading "to which a responsive pleading is required." In this case, the first response to the complaint was JCI's Rule 12(b)(6) motion to dismiss (doc. 8), which was filed on December 13, 2011. More than twenty-one days later, on January 9, 2012, the plaintiff filed the motion to amend. (Doc. 20.)

---

[3] The complaint contains two counts numbered "III."

Accordingly, the plaintiff may not file the amendment "as a matter of course." Rule 15, however, goes on to state that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When the complaint, as amended, is subject to dismissal, the court may deny leave to amend on the ground of futility. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

<u>STANDARD FOR MOTION TO DISMISS FOR FAILING TO STATE CLAIM</u>

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court, in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), established that a complaint should not be dismissed unless it appeared beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court criticized the "no set of facts" standard, stating that it could be construed so narrowly and literally that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id*. at 561. *Twombly* introduced the concept of <u>plausibility</u> as the test for determining a motion to dismiss for failure to state a claim. "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. Justice Souter stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

3

recitation of the elements of a cause of action will not do.

*Id.* at 555.

The court further explained. The plausibility standard is not a probability requirement, but it "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Id.* at 556. The claim for relief must be "plausible on its face." *Id.* at 570. The court denied that it required "heightened fact pleading of specifics," but stated that if plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.  After removing the legal conclusions from the pleadings, courts should weigh the remaining factual allegations and determine if they are sufficient to render the plaintiff's claim plausible. Also, the court may infer "obvious alternative explanations" which constitute lawful conduct. *Id.* at 567.

In the later case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the court restated the plausibility standard, and held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' " *Id.* at 1950. The Eleventh Circuit set out *Iqbal*'s holding:

> Applying these principles to Iqbal's complaint, the Court began by disregarding as wholly conclusory Iqbal's allegations that Mueller was "instrumental" in adopting the detention policy and Ashcroft was the "principal architect" of the policy, and that they willfully agreed to subject Iqbal to harsh treatment for a discriminatory purpose. *Id.* at 1951. The Court then determined that the remaining factual allegations — that Mueller and Ashcroft approved the FBI's policy of arresting and detaining thousands of Arab Muslim men as part of its investigation into the events of September 11 — did not plausibly establish the purposeful, invidious discrimination that Iqbal asked the Court to infer. *Id.* at 1951-52. The alternative inferences that could be drawn from the facts — namely, that the arrests were likely lawful and justified by a nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who

committed terrorist acts-were at least equally compelling. *Id.* Accordingly, the Court ruled that Iqbal's complaint must be dismissed. *Id.* at 1954.

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288-1290 (11th Cir. 2010).

Although the heightened pleading analysis was explicitly rejected, *Twombly*, 550 U.S. at 569 n. 14, it certainly is clear that *Twombly* and *Iqbal* intended to require more than was previously required from the pleader in order to state a claim.[4]

## EMPLOYER LAW

TCI argues that the pleadings that TCI was the plaintiff's employer are insufficient under *Twombly* and *Iqbal*. To answer that question, it is necessary to state what is legally required in order to be considered an employer in the Title VII context. A direct employment relationship is the usual method by which liability is imposed upon an employer. There are, however, other methods that may classify an entity as an employer. In *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1245 (11th Cir. 1998), a Title VII case form this circuit, the court cited *Swallows v. Barnes & Noble Books Stores* as "explaining the differences between the joint employer theory and the single employer theory." That Sixth Circuit case set out three theories — single employer or integrated enterprise, joint employer, and agent.

> Courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer" . . . . In one approach, courts examine whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." . . . In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. .

---

[4] It has been written in one scholarly journal that *Iqbal* makes sufficient pleading especially difficult in civil rights cases which involve motive-based constitutional violations. Rakesh N. Kilaru, *The New Rule 12(b)(6): Twombly, Iqbal, and the Paradox of Pleading*, 62 Stan. L. Rev. 905, 928 (2010).

5

> . . A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992-93 (6th Cir. 1997) (citations omitted).

The Eleventh Circuit has held that the basis for finding a joint employer relationship is "'simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) *quoting National Labor Relations Board v. Browning-Ferris Industries*, 691 F.2d 1117, 1122 (3d Cir.1982)). When discrimination is based on an adverse employment decision, the Eleventh Circuit, in a more recent case, citing *Virgo*, held that the joint employer theory "concentrate[s] on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998). *See also, Clark v. St. Joseph/Candler Health Sys.*, 225 F. App'x 799, 800 (11th Cir. 2007) (unpublished) (citing *Virgo* and noting that the test for joint employer status is whether the non-direct employer retained sufficient control over the terms and conditions of the employee's employment such that it and the direct employer were joint employers of the employee).

## ALLEGATIONS

The complaint alleges that JCI "manufactures automotive seating systems and interior components which it sells to major automobile manufacturers" and that it "owns and operates

a manufacturing facility in Cottondale, Alabama." (Doc. 20-1, p. 4, ¶¶9, 10.) Defendant EDIASA supplies components to JCI's Cottondale facility. (Doc. 20-1, p. 4, ¶11.) Defendant AZ Quality employs a full-time liaison based at the Cottondale facility "who is responsible for dealing with quality issues originating from EDIASA and responsible to communicate with EDIASA about quality concerns and corrective steps." (Doc. 20-1, p. 4, ¶12.) JCI's liaison "has supervisory authority and supervises individuals such as [the plaintiff] employed at the Cottondale facility to address quality issues originating from EDIASA." (Doc. 20-1, p. 5, ¶13.)

AZ's Gino Arenas hired the plaintiff to address any quality problems concerning the parts EDIASA supplied to JCI.[5] The plaintiff started working in the quality department at the Cottondale, Alabama facility on or around January 4, 2011. Gino Arenas, and later Gino's replacement at AZ, Pete Arenas, directly supervised the plaintiff in the liaison position. The plaintiff's work also was supervised, directly or indirectly, by employees of EDIASA, including Quality Superintendent William Yee. The complaint states:

> In addition, Plaintiff was directly or indirectly supervised by employees of Defendant [JCI], both through its control over individuals working at the Cottondale facility and through its contracting relationship with Defendants AZ Staffing[6] and ANM Services, LLC.

(Doc. 20-1, p. 6, ¶21.) The complaint further alleges that the plaintiff and other individuals "nominally employed by ANM," including Jose Farmerio, were directly supervised by management employees of defendant JCI, including Elvira White, JCI's human resources

---

[5]The court disregards the conclusion in the amended complaint that "Plaintiff was economically dependent on Defendant Johnson Controls and Defendant EDIASA." (Doc. 20-1, p. 5, ¶17.)

[6]It is assumed that the amended complaint is actually referring to AZ Quality.

representative, and David Nelson, JCI's second-shift production manager. (Doc. 20-1, p. 6, ¶22.) ANM Services issued the plaintiff's paycheck.

In late 2010 and early 2011, William Yee was assigned by his employer, EDIASA, the supplier of the components whose quality was to be monitored, to work at the Cottondale facility as part of the formal quality review program in which the plaintiff was employed. During the plaintiff's first week of employment, Yee told her that, if she wanted to become a permanent employee, she needed to "come to his hotel and dance for him." (Doc. 20-1, p. 7, ¶24.) The plaintiff went to Yee's hotel room, and Yee "made it clear to [the p]laintiff [that] if she had sex with him, she would have a permanent job." (Doc. 20-1, p. 7, ¶25.) The complaint does not state whether sex between the plaintiff and Yee ensued.

Yee then left the state of Alabama for a while. During Yee's absence, the plaintiff learned that she was pregnant. When Yee returned to Alabama, he insisted that the plaintiff have sex with him. She refused and told him she was pregnant, but Yee still continued to insist. The complaint does not state whether the plaintiff acquiesced. The complaint also states that Farmerio began to ask the plaintiff to have sex with him, using "crude terms" and touching the plaintiff's private parts against her will. (Doc. 20-1, p. 7, ¶27.)

The plaintiff reported Yee's and Farmerio's conduct to human resources personnel and to managers, including "but not limited to" ANM second-shift supervisor Saul Allen. (Doc. 20-1, p. 7, ¶28.) The plaintiff told Allen she was pregnant. Allen referred her to JCI's Human Resources Representative Elvira White. On February 1, 2011, the plaintiff went to White with her complaints. White referred the plaintiff to David Nelson, JCI's Second-shift Production Manager. The plaintiff told Nelson that she was pregnant. The plaintiff was fired

the next day by Pete Arenas.  Arenas told the plaintiff she was fired because Yee and Farmerio said that they no longer wanted the plaintiff working there.  Later, Arenas told the plaintiff that Yee had instructed him to fire her.

## ANALYSIS

Only the issues raised and argued by the parties concerning these motions will be discussed by the court.

### *The Title VII Claims*

The interactions between the various defendant companies and their employees were unusual. Each of them acted in ways consistent with being her employer. Although the plaintiff was hired and directly supervised by employees of AZ Quality, the complaint alleges that JCI had supervisory authority over the plaintiff through JCI's employees. The plaintiff was hired by a company which was supervised by JCI, the plaintiff performed a service for JCI, and the plaintiff worked for JCI at JCI's facility. Further, when the plaintiff complained to her direct employer, ANM, through its second-shift supervisor, Saul Allen, he referred her to White in JCI's human resources department.  When the plaintiff spoke to White, instead of telling the plaintiff that she was complaining to the wrong company, White referred the plaintiff to someone else in JCI, David Nelson, JCI's second-shift production manager. The plaintiff was fired the next day by AZ's Arenas, who had been told by Yee to fire her. Farmerio as well said that the plaintiff should not be allowed to work there any longer.

The Eleventh Circuit made it clear in *Llampallas* that the focus should be on the part the company played in the action.  In that case, the court had to determine whether defendant Palmetto was a joint employer with defendant Mini-Circuits, the plaintiff's direct employer.

Case 7:11-cv-03956-JHE   Document 45   Filed 03/29/12   Page 10 of 11

The court wrote:

> In this case, that adverse employment decision was [the plaintiff's] termination from her position as Production Supervisor at Mini-Circuits, and Palmetto had absolutely nothing to do with that decision. Palmetto had no interaction with Mini-Circuits employees. It made no decisions that affected the terms and conditions of employment at Mini-Circuits. In fact, it was completely uninvolved in the operation of Mini-Circuits.

*Llampallas*, 163 F.3d at 1245. Here, JCI was not an uninvolved bystander.

It is believed that the allegations, after being stripped of conclusions and the facts being accepted as true, have crossed the line of it being conceivable that JCI was the plaintiff's employer to it being plausible that JCI was her employer. Under *Twombly* and *Iqbal*, it is plausible that JCI retained control over the terms and conditions of the plaintiff's employment to the extent that it was the plaintiff's employer under Title VII law.

### *State Law Claims*

JCI contends that it can be liable only to the extent that the individual wrongdoers can be considered its agents. As to the claim for negligent and wanton supervision, training, and/or retention, the complaint can be fairly read as making a direct claim against JCI for <u>its</u> failures to have taken appropriate action to have prevented or stopped the discriminatory conduct of Yee and Farmerio. As to holding JCI liable, not for their actions but for the actions of Yee and Farmerio, it seems that the plaintiff has alleged JCI's supervision or control over Yee and Farmerio or Yee's and Farmerio's employers sufficiently to make a plausible case of agency liability.[7]

---

[7] Neither party has discussed whether the pleadings were sufficient to state state-law claims, such as invasion of privacy or assault and battery. For instance, it is not alleged that Yee actually touched the plaintiff. Again, the court has addressed the motions based only on the grounds asserted by the parties.

## RECOMMENDATION

Based on the foregoing, it is determined that it would <u>not</u> be futile to allow the plaintiff to amend her original complaint. Accordingly, it is RECOMMENDED that the plaintiff's motion for leave to file the amended complaint be granted. It is further RECOMMENDED that JCI's Rule 12(b)(6) motion to dismiss be denied as to all claims, federal and state.

Any party may file specific written objections to the report and recommendations within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

DONE this 29th day of March, 2012.

/s/ Robert R. Armstrong
Robert R. Armstrong, Jr.
United States Magistrate Judge