FILED
2012 Oct-29  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **COURTNEY FRAZER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 7:11-cv-03956-RRA** |
| | ) | |
| **JOHNSON CONTROLS, INC.; ANM SERVICES, LLC; EDIASA; and GENOT'S AZ QUALITY SERVICES, INC., d/b/a/ AZ QUALITY,** | ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## OPINION & REASONS

This case is before the court on the report of the Magistrate Judge recommending that this court grant the motion by plaintiff, Courtney Frazer, for leave to file an amended complaint, and deny the motion by defendant, Johnson Controls, Inc., to dismiss plaintiff's claims.[1]   Defendant filed objections,[2] and plaintiff responded.[3]   Following the reference of the Magistrate Judge's report and recommendation to the undersigned for review of the objections, this court considered the entire file in this action, including the report and recommendation, and reached an

---

[1] Doc. no. 45 (Report & Recommendation).

[2] Doc. no. 50 (JCI's Objections to Report & Recommendation).

[3] Doc. no. 52 (Plaintiff's Response to JCI's Objections).

independent conclusion that defendant's objections are due to be rejected, and that the Magistrate Judge's recommendation is due to be accepted.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2) (alteration supplied).  However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  *Hall v. United Insurance Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Eleventh Circuit "'has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'"  *Hall*, 367 F.3d at 1263 (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

2

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citations omitted).

>        To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to relief that
> is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570.  A claim
> has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.  *Id*., at 556.  The plausibility standard
> is not akin to a "probability requirement," but it asks for more than a
> sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's
> liability, it "stops short of the line between possibility and plausibility of
> 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II. FACTS AS ALLEGED[4]

Plaintiff alleges a complex relationship among the four entities that she has

named as defendants — *i.e.*,  Johnson Controls, Inc. ("JCI"); Ediasa; Genot's AZ

Quality Services, Inc., doing business as AZ Quality ("AZ Quality"); and ANM

---

[4] As always is the case in the context of ruling upon a motion to dismiss, the district court
is required to assume that

> the facts set forth in the plaintiff's complaint are true.  *See Anza* [*v. Ideal Steel
> Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on
> a motion to dismiss, the court must "accept as true the factual allegations in the
> amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001)
> (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual
> allegations (with reasonable inferences drawn favorably to Plaintiffs) in the
> complaint as true").  Because we must accept the allegations of plaintiff's complaint
> as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may
> not be the actual facts.

*Williams v. Mohawk Industries, Inc*., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations
supplied).

Services, LLC ("ANM") — all of whom allegedly employed her jointly from January 4 to February 2, 2011.[5]  Johnson Controls, Inc. ("JCI") manufactured automotive components, and owned and operated a manufacturing facility in Cottondale, Alabama.[6]  The Cottondale facility obtained its parts from Ediasa.[7]  In turn, the Ediasa parts were quality controlled by a full-time liaison based at the Cottondale facility and employed by Genot's AZ Quality Services, Inc., doing business as AZ Quality ("AZ Quality").[8]  The liaison was authorized to supervise other Cottondale facility workers who addressed issues in the quality of the Ediasa parts.[9]

Gino Arenas, a liaison employed by AZ Quality, hired plaintiff to work in the quality department at the Cottondale facility on a temporary basis beginning on or around January 4, 2011, as part of a formal quality review program regarding the parts Ediasa supplied.[10]  Plaintiff received her paycheck from *ANM Services, LLC* ("ANM").[11]  However, plaintiff was directly supervised by the liaison employed by

---

[5] Doc. no. 20-1 (Proposed Amended Complaint) ¶ 8.  In many cases, both the complaint and the proposed amended complaint leave important factual questions unanswered.  This analysis will identify those questions in the footnotes as a commentary.

[6] *Id.* ¶¶ 9-10.

[7] *Id.* ¶ 11.

[8] *Id.* ¶ 12.

[9] *Id.* ¶ 13.

[10] Id. ¶¶ 14-15, 19.  The complaint does not state which of the defendants was responsible for developing the parameters of, and determining the policy for, the quality review program and its workers.

[11] Doc. no. 20-1 (Proposed Amended Complaint) ¶ 17.

*AZ Quality*, Gino Arenas, and, later, by Pete Arenas, his replacement.[12]   Further, plaintiff was directly supervised by management employees of *JCI*, including Human Resources Representative Elvira White and Second Shift Production Manager David Nelson.[13]   Finally, plaintiff was directly or indirectly supervised by employees of *Ediasa*, including Quality Superintendent William Yee.[14]

In late 2010 and early 2011, Ediasa assigned Yee to work at the Cottondale facility as part of the formal quality review program regarding the parts Ediasa supplied.[15]   During plaintiff's first week of employment, Yee told her that she needed to come to his hotel and dance for him if she wanted to become a permanent employee.[16]   Plaintiff went to Yee's hotel, where he made it clear to her that if she had sex with him, she would have a permanent job.[17]

---

[12] *Id.* ¶ 16.  It appears that AZ Quality successively employed two liaisons who shared the same last name.  The complaint occasionally spells the liaisons' last name as "Arenas," and occasionally as "Arenes."  *Compare id.* ¶ 16 *with id.* ¶ 31.  This court will spell their last name as "Arenas," with apologies if that is incorrect.  Further, this court will refer to each liaison by his full name to avoid confusion.

[13] *Id.* ¶¶ 22, 27.  Plaintiff alleges that other individuals who were nominally employed by ANM, including a lead person named Jose Farmerio, were also directly supervised by management employees of JCI, including White and Nelson.  *Id.*

[14] *Id.* ¶ 20.

[15] *Id.* ¶ 23.  The complaint states those dates as "late 2010 *and* early 2011."  *Id.* (emphasis supplied).  It is not clear whether plaintiff actually intended to allege that Ediasa assigned Yee to the Cottondale facility in late 2010 *or* early 2011, or that Ediasa assigned Yee to the Cottondale facility in late 2010, after which time he left and was reassigned to the facility in early 2011.

[16] *Id.* ¶ 24.

[17] Doc. no. 20-1 (Proposed Amended Complaint) ¶ 25.  The complaint does not state whether plaintiff and Yee had sexual intercourse.

Yee then left the state of Alabama.[18]  During his absence, plaintiff learned that she was pregnant.[19]  When Yee returned to Alabama, he insisted that plaintiff have sex with him.[20]  Plaintiff refused to do so, and told him that she was pregnant.[21]  However, Yee continued to insist that plaintiff had sex with him.[22]  Further, Jose Farmerio, a lead person employed by ANM, continuously asked plaintiff to have sex with him in crude terms, and touched her private parts against her will.[23]

Plaintiff reported the sexual harassment by Yee and Farmerio to human resources personnel and managers, including ANM Second Shift Supervisor Saul Allen.[24]  Plaintiff also informed Allen about her pregnancy.[25]  Allen referred her to JCI Human Resources Representative Elvira White, who in turn referred her to JCI Second Shift Production Manager David Nelson.[26]

On February 1, 2011, plaintiff reported the sexual harassment to White and

---

[18] *Id.* ¶ 26.

[19] *Id.*  The complaint does not state whether plaintiff believed that Yee was the father of her child.

[20] *Id.*

[21] *Id.*  The complaint does not state whether plaintiff said or implied that Yee was the father of her child, or whether Yee believed that he was the father.

[22] *Id.*  The complaint does not state whether plaintiff ultimately acquiesced.

[23] Doc. no. 20-1 (Proposed Amended Complaint) ¶ 27.  The complaint does not state whether the actions of Yee and Farmerio were connected.

[24] *Id.* ¶ 28.

[25] *Id.* The complaint does not state whether plaintiff told Allen that she believed that Yee was the father of her child.

[26] *Id.* ¶ 29.  The complaint does not state whether ANM conducted an independent investigation of plaintiff's allegations, or whether ANM left the investigation entirely to JCI employees.

Nelson, and informed them that she was pregnant.[27]   The next day, the liaison employed by AZ Quality, Pete Arenas, told plaintiff that she was fired because Yee and Farmerio said they no longer wanted plaintiff working there.[28]   Pete Arenas subsequently told plaintiff that Yee had instructed him to fire her.[29]

### III.  DISCUSSION

#### A.    Title VII Claim

Before a district court may entertain a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the plaintiff must demonstrate that the defendant meets the statutory definition of an "employer," a term that the Act defines as "a person" or firm that is "engaged in an industry affecting commerce who [or which] has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent or such a person [or firm]."   42 U.S.C. § 2000e(b) (alterations supplied); *see also, e.g., Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1244 (11th Cir. 1998).   Thus, in order to state a claim against JCI for sexual harassment under Title VII, plaintiff had to plausibly allege that JCI was her employer.

The Eleventh Circuit recognizes that, "'in some instances, an employee may

---

[27]  *Id.* ¶ 30.  The complaint does not state whether White referred plaintiff to Nelson at the February 1, 2011 meeting, or at some earlier time.

[28]  *Id.* ¶ 31.

[29]  Doc. no. 20-1 (Proposed Amended Complaint) ¶ 27.  The complaint does not state whether Pete Arenas shared that information during the February 2, 2011 conversation, or at some other time.

have joint employers, that is, more than one employer at the same time.'" *Spears v. Choctaw County Commission*, Case No. 07-0275, 2009 U.S. Dist. LEXIS 66037, *20 n.4 (S.D. Ala. July 30, 2009) (quoting *Eleventh Circuit Pattern Jury Instructions — Civil* § 1.10.4.2).  As the Magistrate Judge noted, "the basis for finding a joint employer relationship is 'simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of the employment of the employees who are employed by the other employer."[30]

Although the Eleventh Circuit Pattern Jury Instructions on joint employers are not directly applicable, they can be instructive.  *See Spears*, 2009 U.S. Dist. LEXIS 66037 at *20-22 n.4 (quoting pattern jury instructions to assist in conducing joint employer analysis).  When evaluating the existence of a joint employer relationship, the Eleventh Circuit instructs that jurors

> should resolve this question in light of the economic realities of the entire relationship between the parties, and should consider each of the following factors to the extent you find that a particular factor is applicable to the case:
>
> (1)    the nature and degree of control of the employee, and who exercises that control;
>
> (2)    the degree of supervision, direct or indirect of the employee's work, and who exercises that supervision;

---

[30] Doc. no. 45 (Report & Recommendation), at 6 (quoting *Virgo v. Riviera Beach Associates*, 30 F.3d 1350, 1360 (11th Cir. 1994)).

(3)     who exercises the power to determine the employee's pay rate or method of payment;

(4)     who has the right, directly or indirectly, to hire, fire, or modify the employment conditions of the employee;

(5)     who is responsible for the preparation of the payroll and the payment of wages;

(6)     who made the investment in equipment and facilities used by the employee;

(7)     who has the opportunity for profit and loss;

(8)     the permanency and exclusivity of the employment;

(9)     the degree of skill required to do the job;

(10)    the ownership of the property or facilities where the employee works; and

(11)    the performance of a speciality job within the production line integral to the business.

Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, *the extent of the right to control the means and manner of the worker's performance is the most important factor*.

*Eleventh Circuit Pattern Jury Instructions — Civil* § 1.10.4.2 (emphasis supplied).

The Magistrate Judge concluded that "[t]he interactions between the various defendant companies and their employees were unusual," and that "[e]ach of them acted in ways consistent with being [plaintiff's] employer."[31]    Specifically, the

---

[31] Doc. no. 45 (Report & Recommendation), at 9 (alterations supplied).

Magistrate Judge reasoned:

> Although the plaintiff was hired and directly supervised by employees of AZ Quality, the complaint alleges that JCI had supervisory authority over the plaintiff through JCI's employees. The plaintiff was hired by a company which was supervised by JCI, the plaintiff performed a service for JCI, and the plaintiff worked for JCI at JCI's facility. Further, when the plaintiff complained to her direct employer, ANM, through its second-shift supervisor, Saul Allen, he referred her to White in JCI's human resources department. When the plaintiff spoke to White, instead of telling the plaintiff that she was complaining to the wrong company, White referred the plaintiff to someone else in JCI, David Nelson, JCI's second-shift production manager. The plaintiff was fired the next day by AZ's Arenas, who had been told by Yee to fire her. Farmerio as well said that the plaintiff should not be allowed to work there any longer.[32]

In its brief raising objections to the Magistrate Judge's Report and Recommendation, JCI argues that

> only two facts are asserted with regards to JCI. One, that although Plaintiff was hired by another entity, the work was performed on site at JCI's Cottondale facility. Two, that after reporting concerns of harassment to Saul Allen, an ANM supervisor, Allen directed the Plaintiff to JCI employees with her complaint and JCI investigated.[33]

In an effort to downplay the significance of plaintiff's allegation that she was directly supervised by management employees of JCI, "*including* Johnson Controls Human Resources Representative Elvira White and Johnson Controls Second Shift Production Manager David Nelson,"[34] JCI argues that, "*[a]part from investigating the*

---

[32] *Id.*

[33] Doc. no. 50 (JCI's Objections to Report & Recommendation), at 5-6.

[34] Doc. no. 20-1 (Proposed Amended Complaint) ¶¶ 22 (emphasis supplied).

*allegation brought to its attention by an employee of ANM*,[35] Plaintiff does not identify a single instance of interaction with JCI and she has not named any individual employed by JCI with whom she interacted."[36]

However, JCI cites no authority for the proposition that a complaint must be pled to such a degree of specificity.  By alleging that plaintiff's supervisors from JCI *included* White and Nelson, plaintiff in effect stated that those supervisors *were not limited to* White and Nelson.  Under the pleading standards articulated in Federal Rule of Civil Procedure 8(a)(2), *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), plaintiff was not required to name any other JCI employee with whom she interacted.[37]

Likewise, JCI attempts to minimize the impact of the fact that it investigated plaintiff's sexual harassment complaint by arguing that an "obvious alternative explanation is that JCI felt obligated to conduct an investigation into complaints of

---

[35] This court will discuss the importance of JCI's investigation below.

[36] Doc. no. 50 (JCI's Objections to Report & Recommendation), at 7-8 (alteration and emphasis supplied).

[37] JCI also spends time comparing plaintiff's allegations regarding to JCI, with her allegations regarding the other defendants.  *See, e.g., id.* at 7 ("*Unlike the other entities*, Plaintiff does not offer any specific facts as to how she was supervised by JCI — either directly or indirectly."); *id.* at 8 (Plaintiff states she was hired by an employee of AZ Quality (FAC ¶ 15), and fired by an employee of AZ Quality based on input from an Ediasa employee (FAC ¶ 31).  *There are not similar factual allegations about JCI in either the Complaint or FAC*.") (emphasis supplied).  However, it appears that this court must evaluate whether each of plaintiff's claims *independently* satisfies Rule 8(a)(2), *Twombly*, and *Iqbal*, and is not required, or authorized, to base its decision on a comparison *between* her claims.

11

harassment alleged to have occurred on its premises,"[38] that "it was not Plaintiff who directed the complaint to JCI, it was an employee of ANM,"[39] and that, "[r]egardless of why the ANM thought referral of the complaint was appropriate, it is likely that if JCI had refused to investigate such a complaint, the Plaintiff would have complained about JCI's failure to investigate."[40]

JCI's arguments are not appropriate at the stage of a motion to dismiss, when this court must draw all reasonable inferences in plaintiff's favor. *See Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006). The fact that plaintiff's allegations were repeatedly referred to multiple employees of JCI for investigation raises the inference that JCI was one of her employers.[41] In particular,

---

[38] *Id.* at 6.

[39] *Id.* at 8.

[40] *Id.* (alteration supplied).

[41] In *Kennedy v. Western Sizzlin Corp.*, 857 So. 2d. 71 (Ala. 2003), for example, the Alabama Supreme court noted a franchisor's *refusal* to investigate complaints of sexual harassment against its franchisee as evidence that the franchisor lacked sufficient control over the franchisee to establish employer liability.

> Further evidence of [the franchisor's] absence of control over the [franchisee's] operations can be seen in the period following the date on which the employees first brought allegations of sexual harassment against Lambert [one of the stockholders of the franchisee]. When informed of the employees' complaints, [the franchisor] told [the other stockholder] that its hands were tied unless Lambert's actions constituted a breach of the franchise agreement. [The franchisor] could not terminate the franchise agreement based on Lambert's alleged sexual harassment until it or Lambert received notice from a governmental agency that he was violating the law. The EEOC issued its determination letter in November 2000. As of that date, however, [the franchisor] had already terminated the franchise agreement on other, purely financial, grounds.

*Id.* at 77.

12

if it turns out that JCI was the *only* defendant that investigated plaintiff's complaint, it could be evidence that JCI had assumed control over disciplining employees and maintaining the work environment for the Cottondale facility as a whole. Accordingly, defendant's motion to dismiss plaintiff's Title VII claim is due to be denied.

## B.     State Law Claims

A sexual harassment plaintiff can state a claim against an employer under two theories of liability: *i.e.*, direct liability, which is based on the actions *of the employer*; and indirect liability, which is based on the actions *of its employees*.  *See Faragher v. City of Boca Raton*, 111 F.3d 1530, 1535 (11th Cir. 1997) (*en banc*).  Thus, in order to state claims against JCI under state law, plaintiff had to plausibly allege either that JCI engaged in wrongful conduct, or that JCI employed the individuals who did so.

The Magistrate Judge concluded:

> As to the claim for negligent and wanton supervision, training, and/or retention, the complaint can be fairly read as making a direct claim against JCI for its failures to have taken appropriate action to have prevented or stopped the discriminatory conduct of Yee and Farmerio. As to holding JCI liable, not for [its] actions but for the actions of Yee and Farmerio, it seems that the plaintiff has alleged JCI's supervision or control over Yee and Farmerio or Yee's and Farmerio's employers sufficiently to make a plausible case of agency liability.[42]

In its brief raising objections to the Magistrate Judge's Report and

---

[42] Doc. no. 45 (Report & Recommendation), at 10 (alteration supplied).

Recommendation, JCI argues that "Plaintiff alleges no facts other than employees of co-defendants Ediasa and ANM committed the alleged wrongful conduct."[43]   That claim is simply not correct.  Briefly, plaintiff alleges that Yee and Farmerio worked at the Cottondale facility owned by JCI, on a formal quality review program regarding the parts Ediasa supplied to JCI,[44] that plaintiff's complaint against Yee and Farmerio was investigated by employees of JCI,[45] and that Farmerio was directly supervised by management employees of JCI.[46]   Further, this court concluded above that plaintiff plausibly alleged that she was employed by JCI.  Thus, it is significant that she was allegedly directly or indirectly supervised by Yee,[47] that Yee and Farmerio apparently influenced the decision to terminate her employment,[48] and that Yee, in fact, instructed Pete Arenas to fire her.[49]   Accordingly, defendant's motion to dismiss plaintiff's state law claims is also due to be denied.

In sum, this court is not prepared to disentangle the complex relationship among the four defendants and their alleged employees without the benefit of discovery. Even though plaintiff could certainly have pled more facts about the roles and

---

[43] Doc. no. 50 (JCI's Objections to Report & Recommendation), at 5-6.
[44] Doc. no. 20-1 (Proposed Amended Complaint) ¶¶ 20, 22.
[45] *Id.* ¶¶ 29-30.
[46] *Id.* ¶ 22.
[47] *Id.* ¶ 20.
[48] *Id.* ¶ 31.
[49] *Id.* ¶ 27.

responsibilities of each of the defendants, and even though JCI may ultimately turn out *not* to be the employer of plaintiff or of her alleged sexual harassers, plaintiff has pled facts sufficient to survive a motion to dismiss.

## IV.  CONCLUSION

Accordingly, this court hereby rejects JCI's objections, and accepts the Magistrate Judge's Report and Recommendation.  Plaintiff's motion for leave to file an amended complaint is GRANTED, and JCI's motion to dismiss her claims is DENIED.  It is ORDERED that the clerk of the court return this case to the Magistrate Judge for all further proceedings.

DONE and ORDERED this 29th day of October, 2012.

_____

United States District Judge